UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANETTE FLOWERS,

        Plaintiff,

v.

Case No. 10-cv-15164

Paul D. Borman
United States District Court

Mark Randon
United States Magistrate Judge

IDS PROPERTY CASUALTY
INSURANCE COMPANY, dba
AMERIPRISE AUTO & HOME
INSURANCE,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT IDS PROPERTY CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 26)

This matter is before the Court on Defendant IDS Property Casualty Insurance Company's ("IDS") Motion for Summary Judgment. (ECF No. 26.) Plaintiff filed a Response (ECF No. 29) and IDS filed a Reply (ECF No. 30). The Court held a hearing on October 31, 2012. For the reasons that follow, the Court GRANTS Defendant's motion and dismisses Plaintiff's Complaint with prejudice.

**INTRODUCTION**

On November 22, 2009, a fire caused damage to Plaintiff's principal residence at 1434 Atkinson Street, Detroit, Michigan (the "Property"). Defendant IDS Property Casualty Insurance Company d/b/a Ameriprise Auto & Home Insurance ("IDS") insured the Property at the time of the

1

fire under a policy of insurance issued to the Plaintiff. The Policy provided for payment of additional living expenses incurred by Plaintiff, in the event that her residence became uninhabitable, in an amount equal to Plaintiff's increased living expenses necessary to maintain her normal standard of living while unable to reside in her home. IDS alleges that Plaintiff made certain misrepresentations during the course of IDS's investigation into her claims for payment of alternate living expenses that serve as grounds to cancel the Policy of insurance and deny Plaintiff's claim. Plaintiff denies having made any misrepresentations during the investigation. IDS now moves for summary judgment.

## I.   BACKGROUND

Plaintiff's principal residence at 1434 Atkinson Street, Detroit, Michigan sustained damage as the result of a fire on November 22, 2009. At the time of the fire, the Property was insured under a Policy maintained by Plaintiff through Defendant IDS. (ECF No. 26, Def.'s Mot. Ex. 1, Policy of Insurance.) The Policy provided coverage for damage to the Property and additional living expenses incurred by Plaintiff as a result of the fire:

> **Additional Living Expense and Loss of Rents Coverages**
>
> If a covered loss makes your residence premises uninhabitable, we will pay at your option . . . the reasonable increase in your living expenses necessary to maintain your normal standard of living while you live elsewhere . . . .

*Id.* at 3.

The Policy also contained a provision entitling IDS to void the entire policy if an insured intentionally conceals or misrepresents material facts:

> **Concealment or Fraud**
>
> This entire policy is void if an insured person has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance, or acted fraudulently or made false statements relating to this insurance.

2

*Id.* at 12.

Upon receipt of Plaintiff's claim for damage to the Property, IDS commenced an investigation into the facts and circumstances surrounding the loss. IDS's investigation ultimately concluded that the fire was incendiary in origin, i.e. it had been set at two points of origin fueled by combustible vapors of flammable liquids. (ECF No. 26, Def.'s Mot. Ex. 2, Cause and Origin Report pp. 6-7.) The Cause and Origin Report concludes that the fire at the Property originated in two separate and distinct areas, the kitchen pantry was a place of origin and the basement stairs are noted as a separate and independent center of origin. *Id.* pp. 5-6. The Report concludes that the ignition source of the fire was an ignitable distributed over the areas of origin. *Id.* p. 6. The Report concludes that the fire is "incendiary" and "foul play is suspected." *Id.* p. 7.

As part of their investigation, IDS conducted an Examination Under Oath ("EUO") of the Plaintiff. (Def.'s Mot. Ex. 9, Transcript of Examination Under Oath of Jeanette Flowers, January 4, 2010.) During the EUO, Plaintiff represented to the investigator that she entered into a short-term lease for property located at 9283 Steel Street, Detroit, Michigan, at the cost of $3,000 per month as alternate living following the fire. (Def.'s Mot. Ex. 9, EUO 5; Ex. 3, Short Term Lease Agreement.) When asked from whom she was renting the Steel property, Plaintiff responded: "Well it's Kimberly – I can't think of her last name right now. It's only been two weeks. I'll have to give you that." (Def.'s Mot. Ex. 9, EUO 5.) When asked how she found the Steel property, she replied that she and her son had found it: "He knew somebody and it's like - yeah." *Id.* at 6. In fact, "Kimberly," with whom Plaintiff entered into the Short Term Lease, was Plaintiff's son's girlfriend of ten years, whom Plaintiff knew to Kimberly Merriweather. (Def.'s Mot. Ex. 5, Transcript of Videotaped Interview of Kimberly Merriweather, January 21, 2010, p. 3; Ex. 6, February 6, 2012

3

Deposition of Jeanette Flowers 7-8.)

Also at her EUO, Plaintiff was asked about her Mortgage payments on the Atkinson Property that sustained the loss from fire. She responded that her monthly mortgage payment was $1,200 but that she had failed to remit her mortgage payment in the months preceding the fire because she was in the process of trying to obtain a loan modification. (Def.'s Mot. Ex. 9, EUO 24-27.)

At her EUO, Plaintiff was asked whether she owned any other real property other than the Property on Atkinson that sustained the fire loss damage. Plaintiff responded that she owned two other rental properties; 15751 Steel, where she used to live and 8198 Ellsworth. *Id.* at 66-67. Plaintiff testified that both properties were currently occupied and generating rental payments. *Id.* Plaintiff was asked later in her EUO again about her other rental properties: "With regard to your two rental properties . . . do you still have mortgages on [them]?" *Id.* at 84. Plaintiff testified that there was a mortgage on the 15751 Steel property ($825/month) and that she received $700/month in rent from that property. *Id.* Plaintiff testified that there was no mortgage on the Ellsworth property and that she received $500 in rent from that property. *Id.* at 85.

At no time during the course of her EUO did Plaintiff disclose, although specifically asked whether she owned any other real property other than the Atkinson Property, that in fact she owned a third rental property – the property at 9283 Steel where she moved after the fire and for which she received $3,000/month from IDS for alternate living expenses. (ECF No. 26, Def.'s Mot. Ex. 4, Covenant Deed.) Despite the fact that only Plaintiff appears on the Deed to the 9283 Steel property, Ms. Merriweather, from whom Plaintiff purported to lease the 9823 Steel property, testified that Plaintiff did own the 9283 Steel property but that Ms. Merriweather also "owned" the house. Although the Short Term Lease between Plaintiff and Ms. Merriweather indicated a monthly rental

4

fee of $3,000/month, Ms. Merriweather testified that Plaintiff was renting the 9283 Steel property for $525/month but had never actually paid rent to Ms. Merriweather. (ECF No. 26, Def.'s Mot. Merriweather Tr. 22-23.)

In her deposition, Plaintiff acknowledged that she was the legal owner of the 9283 Steel property, but that her son's girlfriend "Kimberly," whom she had known for over ten years as Kimberly Merriweather, was also an "owner" because Kimberly had helped to pay for the house. (ECF No. 26, Def.'s Mot. Ex. 6, Flowers Dep. 7-8, 10.) Plaintiff testified that she (Plaintiff) has taken deductions on her tax returns for the 9283 Steel Property each year since she purchased the property. *Id.* at 8. Plaintiff testified that although she was the legal owner of 9283 Steel and took tax deductions on the 9283 Steel Property, she never disclosed her ownership of 9283 Steel to IDS, either when she was expressly asked this question at her deposition or at any later point in time. *Id.* at 14, 19. When Plaintiff was asked by IDS to submit a signed lease agreement with the "owner" of 9283 Steel to substantiate her claim for reimbursement of alternate living expenses, Plaintiff submitted a "lease agreement" with Ms. Merriweather, and again failed to disclose that in fact Plaintiff was the owner of the 9283 Steel Property. (*Id.* at 19-20; Def.'s Mot. Ex. 3, Short Term Lease Agreement.)

Plaintiff testified that IDS paid her two payments of $3,000 for the 9283 Steel rental but that Plaintiff never paid any of that $6,000 to Kimberly, the alleged lessor, as rent because "[i]t was like a repayment." *Id.* at 8, 30-31. Plaintiff testified that she had previously leased out the 9283 Steel property for at most $500-$600/month, enough to cover the $400 mortgage payment she had to make on that property. *Id.* at 15-17. Plaintiff also testified that at the time of the fire, she was behind on her mortgage payments on the Atkinson Property that suffered the fire damage. *Id.* at 25.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The

central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

### III. ANALYSIS

IDS claims that during her EUO and in the course of submitting her claim for alternate living expenses, Plaintiff concealed or misrepresented material facts regarding her ownership interest in and rental payments on the 9283 Steel property. On this basis, IDS seeks to void the Policy under the fraud provision of the Policy and deny Plaintiff's claim for the damage sustained from the fire at the Atkinson Property. To establish its claim that Plaintiff violated the fraud and concealment provision of the Policy, IDS must show that the facts concealed or misrepresented by Plaintiff were material, that they were false and that Plaintiff knew her statements were false or that she made them with reckless disregard for their truth intending that IDS rely on them:

> The insurer's defense of "false swearing" is an allegation that the insured submitted fraudulent proof of loss. Fraud or false swearing implies something more than mistake of fact or honest misstatements on the part of the insured. It may consist of knowingly and intentionally stating upon oath what is not true, or stating a fact to be true although the declarant does not know if it is true and has no grounds to believe that it is true. In order to prevail, the insurer must prove not only that the swearing was false, but also that it was done knowingly, wilfully, and with intent to defraud. Fraud cannot be established from the mere fact that the loss was less than was claimed in the preliminary proofs furnished to the insurer.
>
> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim.

*Mina v. Gen'l Star Indemnity Co.*, 218 Mich. App. 678, 686 (1996), *rev'd in part on other grounds*, 455 Mich. 866 (1997) (citing *Dadurian v. Underwriters at Lloyd's of London*, 787 F.2d 756, 759-60 (1st Cir. 1986)).

Plaintiff responds that there are genuine issues of material fact that remain regarding

8

Plaintiff's performance of the conditions of the Policy, that Plaintiff had no "duty" to "volunteer" the information regarding her ownership interest in the 9283 Steel property and that the alleged misrepresentations made during the EUO were the result of the investigator's failure to ask the appropriate questions. Notably, Plaintiff does not question IDS's legal authority to void the Policy in its entirety if Plaintiff in fact made the alleged material misrepresentations regarding the 9283 Steel property.

Plaintiff's argument is utterly without merit. Plaintiff was pointedly asked at the EUO to identify "any other real property other than [Atkinson]" that she owned. She identified two other rental properties and did not identify 9283 Steel, a property that she concedes in her deposition that she owns, on which she had a mortgage, for which she took tax deductions and that she has rented to others in the past! She was again asked later in her deposition to identify whether she had ever held a mortgage on her other rental properties. Again, Plaintiff failed to identify the 9283 Steel property. This is not a failure on the part of the questioner at all. The questioner directly asked Plaintiff to identify all other property she owned - she did not do so. Even if, as Plaintiff claims, she considered herself only a "partial owner," (despite the uncontested fact that she alone holds title to the 9283 Steel Property) her failure to respond with this information was similarly false. Similarly, when asked to provide IDS with an agreement reflecting her lease arrangements with the *owner* of the 9283 Property to substantiate her claim for alternate living expenses, Plaintiff submitted a "lease" agreement with Ms. Merriweather and again failed to disclose the fact that Plaintiff was the owner of the 9283 Property that she was allegedly "leasing." Plaintiff admits ownership of the property and does not claim that she "forgot" this fact.

9

It is also not genuinely in dispute that this fact would have been material to IDS in its evaluation of Plaintiff's request for $3,000 in alternate monthly living expenses. *See Mina*, 218 Mich. App. at 686 ("A statement is material if it is reasonably relevant to the insurer's investigation of a claim.") (citing *Dadurian*, 787 F.2d at 759).[1] "To be considered material, a statement need not relate[] to a matter or subject which ultimately proves to be decisive or significant in the ultimate disposition of the claim; rather, it is sufficient if the statement was reasonably relevant to the insurance company's investigation of a claim." *Dadurian*, 787 F.2d at 759-60 (internal quotation marks and citation omitted). It is beyond reasonable dispute that had IDS been informed of Plaintiff's ownership of the 9283 Steel Property for which she sought reimbursement of $3,000 per month in alternate living expenses, this would have been "reasonably relevant" to their review of her claim for alternate living expenses.

Nor is it significant that the concealed and misrepresented facts related only to that portion of the claimed loss relating to alternate living expenses.[2] In *Martin v. Farm Bureau General Ins. Co. of Michigan*, No. 275261, 2008 WL 1807940 (Mich. Ct. App. April 22, 2008) (unpublished opinion) the Michigan Court of Appeals addressed this very issue. In *Martin*, the defendant

---

[1] Moreover, Plaintiff concealed her relationship to Ms. Merriweather, her son's girlfriend of ten years and the person with whom Plaintiff claimed joint ownership of the 9283 Steel property. Plaintiff claimed not to know "Kimberly's" last name, implying that she had only known her "for two weeks." In her deposition, Plaintiff contradicted this testimony given at her EUO, testifying at her deposition that she knew "Kimberly" to be Kimberly Merriweather and had known her as her son's girlfriend for over ten years. (ECF No. 26, Def.'s Mot. Ex. 6, Flowers Dep. 7-8.) This relationship between Plaintiff and her alleged "lessor" may in and of itself have been material to IDS in its decision to pay Plaintiff's alternate living expenses.

[2] Plaintiff does not contest this point of law. "Plaintiff admits that the insurance policy covers concealment and misrepresentations for living expenses as a preclusion for payment of coverage." (ECF No. 29, Pl.'s Resp. 4  ¶ 15.)

insurance company denied its insured's claim for loss related to a fire on the basis of arson, fraud and false swearing. *Id.* at *1. The jury found that the insured did not commit arson but did make false statements regarding the amount of his personal losses. *Id.* The trial court found that the jury's verdict was against the great weight of the evidence because the insured's misrepresentations pertained only to his personal losses and it was "a harsh result" to deny the insured coverage for his real property and emergency housing expenses. *Id.* Reversing the trial court and remanding for entry of judgment for the defendant, the court of appeals reasoned:

> Here, the insurance policy clearly states that the entire policy is void if the insured conceals or misrepresents material facts or circumstances, engages in fraudulent conduct or makes false statements relating to either the insurance or to a loss to which the insurance applies. The policy condition does not differentiate between coverages for personal property, realty, and emergency living expenses, and specifically voids the whole policy upon a finding of misrepresentation or fraud. Furthermore, the misrepresentation or fraud must only pertain to a loss, in order to nullify coverage. Thus, to void the policy, the insured is not required to lie about all of his or her losses; rather a lie related to a single loss operates to void the policy. . . . [P]laintiff argues that his insurance policy should not be voided for misrepresentations about items that represented a small percentage of his claim. Unfortunately for plaintiff, the insurance policy does not differentiate between big and small lies. The policy clearly states that the entire policy is void if the insured conceals or misrepresents material facts or circumstances, engages in fraudulent conduct or makes false statements relating to either the insurance or to a loss to which the insurance applies. The jury found that plaintiff committed fraud and false swearing regarding the claims he submitted to defendant. An insurance policy must be enforced in accordance with its terms.

2008 WL 1807940, at *3, 6. So too here. The instant policy is even more broad, permitting voiding of the entire policy based upon any concealment or misrepresentation "relating to this insurance." Plaintiff's patent concealments and misrepresentations in response to direct questions regarding her ownership of other real property, and her failure to disclose her ownership interest in the very property for which she claimed significant rental reimbursement, are grounds on which, under the

11

clear and unambiguous language of the policy, IDS may void the entire policy.

Plaintiff rests her entire response to Defendant's motion on her claim that her intent in answering the questions posed at her EUO cannot be determined as a matter of law and therefore summary judgment is inappropriate. The Court is cognizant of the fact that broadly speaking, "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." 10A Wright & Miller, Federal Practice & Procedure § 2726, 3d ed. 2010. Moreover, the Court appreciates that "when state of mind, or "consciousness and conscience" is involved, credibility often will be central to the case." *Id.* § 2730. However, in the instant case there is no dispute that Plaintiff did own the property at 9283 Steel and that she did not disclose this fact in response to direct questions seeking this information at her EUO. This was at the very least a reckless disregard for the truth regarding her ownership of other properties. It was not up to Plaintiff to decide whether this information was material to IDS's investigation of her claim and a statement is material if it is "reasonably relevant" to the investigation of the claim. Reasonable minds could not differ on the issue of materiality in this instance – had IDS known that Plaintiff in fact owned the property she was leasing and that the property had never been leased for more than $600/month, these facts would have "been relevant" to their decision to pay Plaintiff $3,000/month for alternate living expenses. The question of whether Plaintiff ultimately could have justified seeking $3,000/month from IDS while she was unable to live in her home is irrelevant to the inquiry. "To be considered material, a statement need not relate[] to a matter or subject which ultimately proves to be decisive or significant in the ultimate disposition of the claim . . . ." *Dadurian*, 787 F.2d at 759-60 (internal quotation marks and citation omitted). If the fact concealed would have been reasonably relevant to IDS's obligation under the Policy to

pay alternate living expenses, the materiality inquiry is at an end.

Nor is there any dispute that to substantiate her claim for alternate living expenses, Plaintiff submitted a signed "lease" to IDS for the 9283 Steel Property (which in fact she owned), intending that IDS rely on her status as a tenant who was obligated to pay $3,000 per month to the landlord, when in fact she was the owner of the 9283 Steel Property and paid nothing to the alleged landlord. Plaintiff testified at her deposition that she was instructed by IDS to submit a signed agreement with the owner of the 9283 Steel Property in order to receive reimbursement; she submitted the signed "lease" with Ms. Merriweather for $3,000 per month and never disclosed to IDS that in fact *Plaintiff* was the owner of the property she was leasing. (ECF No. 26, Def.'s Mot. Ex. 6, Flowers Dep. 19-20.)

Viewing the facts in the light most favorable to the Plaintiff, there is no genuine issue of material fact that Plaintiff made a misrepresentation or concealed a fact, either intentionally or in reckless disregard for the truth, and that this fact would have been "reasonably relevant" to IDS's investigation of Plaintiff's claim. No reasonable juror could conclude, based on the undisputed facts presented, that Plaintiff truthfully answered the questions presented to her during the EUO or that her failure to disclose these facts about the 9283 Steel property was anything but reckless disregard for the truth. Given the unambiguous language of the Policy, which clearly forewarned Plaintiff that any material fact that she concealed or misrepresented would result in a voiding of the entire Policy, IDS was entitled to cancel the Policy and deny the entire claim. Like the plaintiff in *Martin*, Plaintiff is not saved by the fact that her "lie" perhaps went to a small part of her total claimed loss. Plaintiff's self-dealing in arranging her "alternate living expenses" is patently deceptive and her concealment of these important facts during her EUO and in submitting her claim for reimbursement

13

of alternative living expenses is a valid basis to void the Policy and deny Plaintiff's claim in its entirety.

IV.     **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (ECF No. 26) and DISMISSES Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

_____
Paul D. Borman
United States District Judge

Dated: 11-26-12